**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARCUS PHILLIPS,                  :
                                  :    Civil Action No. 02-2120 (JLL)
            Petitioner,           :
                                  :
        v.                        :    **OPINION**
                                  :
TERRY MOORE, et al.,              :
                                  :
            Respondents.          :


**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>                    Counsel for Respondents
Marcus Phillips                    Gary A. Thomas
#248656                            Ofc. of the Essex Co. Pros.
East Jersey State Prison           Essex County Courts Bldg.
Lock Bag R                         Newark, NJ 07102
Rahway, NJ 07065


**LINARES**, District Judge

        Petitioner Marcus Phillips, a prisoner currently confined at

East Jersey State Prison, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are

Administrator Terry Moore and the Attorney General of New Jersey.

        For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The undisputed facts are as follows:[1]

On June 13, 1990, at approximately 7:30 p.m., Petitioner shot and killed Ronald Bailey in front of 40 West Kinney Street in Newark, New Jersey.  Petitioner was accompanied by his friend and co-defendant Troy White.  At the scene, Petitioner and the victim argued before Petitioner was handed a gun by co-defendant Artemis Scott.  Petitioner raised the gun and shot the victim in the head.  Three eyewitnesses identified Petitioner as the shooter.

The Medical Examiner estimated that the victim was shot from a distance of approximately two feet.

After the shooting, Petitioner ran to Crawford Street and tossed the gun away.  Scott and White were arrested near the scene.

At trial, Petitioner testified that the victim was a drug dealer and that the day before the shooting the victim had

_____

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Here, there is no state court statement of the relevant facts of the case as a whole.  State court factual determinations regarding specific issues will be referenced as appropriate.

cheated Petitioner by selling him a bag of flour instead of heroin.  Petitioner testified that he went to confront the victim about the flour, to get his $15 back, and that he asked White to go along because he was afraid of the victim and his friends. Scott joined Petitioner and White after they were already at the scene.  Petitioner testified that he did not take a gun to the scene.  According to Petitioner, as the argument heated up, the victim stepped toward Petitioner, raising his arm as if to punch Petitioner.  Scott stepped between them and passed Petitioner his gun, after which Petitioner shot the victim.[2]  Petitioner stated that he was afraid of the victim, who was taller and heavier than Petitioner, when the victim "lunged" at him.

Petitioner stated that he saw Petitioner "go back" after the shooting, but he did not know that the victim was killed or that the police were subsequently looking for him.  He testified that he went to North Carolina and lived with his grandmother after the shooting, where he obtained work as an apprentice mason.  He was eventually arrested in North Carolina in June 1992 pursuant to a warrant for his arrest issued on June 18, 1990.

---

[2] Petitioner's characterization of events differs from the characterization of the eye-witnesses and co-defendant White, some of whom say that Petitioner took a gun to the scene and pulled it from his pocket.

B.   Procedural History

Petitioner was convicted on November 12, 1992, in the Superior Court of New Jersey, Law Division, Essex County, of murder and weapons offenses.  He was sentenced to a term of life imprisonment.  The Superior Court, Appellate Division, affirmed on January 31, 1995, and, in response to Petitioner's motion for to file a supplemental brief, on  May 5, 1995.  The Supreme Court of New Jersey denied certification on October 3, 1995. Petitioner did not petition the U.S. Supreme Court for a writ of certiorari.

Petitioner filed a timely motion for post-conviction relief in the trial court, which was denied on March 6, 1998, without an evidentiary hearing.  On October 27, 1999, the Appellate Division affirmed the denial of post-conviction relief.  On February 16, 2000, the Supreme Court of New Jersey denied certification.

Petitioner's second motion for post-conviction relief, filed on June 7, 2000, was denied on September 7, 2000.  On February 5, 2002, the Appellate Division affirmed.  On April 3, 2002, the Supreme Court of New Jersey denied certification.

Petitioner timely filed this Petition pursuant to 28 U.S.C. § 2254.  Petitioner claims that his conviction is invalid because of allegedly defective jury instructions, improper response to a jury request for read-back of testimony, ineffective assistance of trial and appellate counsel, improper evidentiary rulings, the

4

prosecutor's failure to provide proper discovery, and juror misconduct.  Respondents have answered and Petitioner has filed a Traverse in support of his Petition.  This matter is now ripe for disposition.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the

state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and nevertheless
arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application
of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

     Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.

_Angelone_, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  _See_ _Hameen v. State of Delaware_, 212 F.3d 226, 248 (3d Cir. 2000), _cert. denied_, 532 U.S. 924 (2001); _Purnell v. Hendricks_, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  _See also_ _Schoenberger v. Russell_, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  _See_ 28 U.S.C. § 2254(b)(2); _Lambert v._ _Blackwell_, 387 F.3d 210, 260 n.42 (3d Cir. 2004); _Lewis v._ _Pinchak_, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  _Estelle_ _v. Gamble_, 429 U.S. 97, 106 (1976); _Haines v. Kerner_, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  _See_ _Royce v. Hahn_, 151 F.3d 116, 118 (3d Cir. 1998); _Lewis v. Attorney General_, 878 F.2d 714, 721-22 (3d Cir. 1989); _United States v. Brierley_, 414 F.2d 552, 555 (3d Cir. 1969), _cert. denied_, 399 U.S. 912 (1970).

III.   ANALYSIS

A.   Jury Instructions

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief.  Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may

8

convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis. Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in
> artificial isolation, but must be viewed in the context
> of the overall charge. If the charge as a whole is
> ambiguous, the question is whether there is a
> reasonable likelihood that the jury has applied the
> challenged instruction in a way that violates the
> Constitution.

Middleton v. McNeil, 124 S.Ct. 1830, 1832 (2004) (internal quotations and citations omitted).

1.   The "Flight" Instruction

The trial court instructed the jury on the issue of "flight" as follows:

> There has been some testimony in the case from
> which you may inquire [sic] that the Defendant fled
> shortly after the alleged commission of the crime. The
> Defendant has offered the following explanation that he
> was scared, that he was afraid of Ronald Bailey, and
> his friends.

> If, after a consideration of all the evidence, you find that the Defendant fearing that an accusation would be made against him on the charge involved in the indictment or in arrest by reason thereof took refuge in flight for the purpose of evading the accusation or arrest, then you may consider such flight in connection with all the other evidence in the case as an indication or proof of a consciousness of guilt.

(Tr., Oct. 27, 1992 at 113.)

Petitioner contends that the evidence at trial did not support the issuance of a "flight" instruction, because Petitioner's conduct did not intrinsically indicate a consciousness of guilt.  More specifically, Petitioner contends that the trial court "failed to explain to the jury that if ... it credited Petitioner's explanation for the departure, then it may not infer that he fled as proof of a consciousness of guilt." Petitioner contends that the flight instruction deprived him of a fair trial.[3]

The trial court found this claim procedurally barred, and the Appellate Division affirmed.

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. See, e.g., Doctor[ v. Walters, 96 F.3d 675, 683 (3d Cir. 1996)].  Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a

---

[3] Petitioner asserted this claim in his second motion for post-conviction relief.  (Exs. 11, 12.)

fundamental "miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

<u>Carpenter v. Vaughn</u>, 296 F.3d 138, 146 (3d Cir. 2002).

Respondents do not, however, assert the state procedural bar as a defense here, and they address the claim on the merits. Accordingly, the Court will proceed to address the claim on the merits.[4]

Whether or not the instruction is correct under state law, there is no error so great as to deprive Petitioner of a fair trial.  The instruction presented both Petitioner's explanation for his flight and the alternative theory of flight for the purpose of evading accusation or arrest, leaving the factual conclusion up to the jury.  The instruction did nothing to shift the burden of proof.  Petitioner is not entitled to relief on this claim.

2.  <u>The "Homicide" Instructions</u>

The trial court instructed the jury as to the various forms of homicide at length:

I am now going to advise you and instruct you as to the specific elements of homicide in this case.

First, let me give you this little sketch.  The various kinds of homicide that you will be considering may be distinguished by a person's state of mind at the

---

[4] Respondents do not assert the defense of failure to exhaust or procedural bar as to any claims asserted here. Accordingly, the Court will address all of these claims on the merits.  <u>See</u> 28 U.S.C. § 2254(b)(2).

time of the killing as you determine that state of mind to be

For example, as to passion, provocation murder, murder involves a purposeful, knowing causation of death[--] purposeful and knowing are states of the mind [--] or serious bodily injury resulting in death which does not--in the heat of passion resulting from a reasonable provocation.

If the murder did occur in the heat of passion resulting from reasonable provocation, I will be asking you that in the verdict sheet.

Aggravated manslaughter is separate, included lesser included offense.  That offense occurs when an actor recklessly causes death under circumstances manifesting extreme indifference to human life.

Clearly, reckless manslaughter occurs when you-- the actor recklessly causes death.

(Tr., Oct. 27, 1992, at 91-92.)

A person is guilty of murder if he purposely causes death or serious bodily injury resulting in death or knowingly causes death or serious bodily injury resulting in death and did not act in the heat of passion resulting from reasonable provocation.

If you find beyond a reasonable doubt that the Defendant purposely or knowingly caused Ronald Bailey's death or serious bodily injury resulting in death, and that he did not act in the heat of passion resulting from reasonable provocation, the Defendant would be guilty of murder.

If, however, you find that the Defendant purposely or knowingly caused death or serious bodily injury resulting in death, and that he did act in the heat of passion resulting from reasonable provocation, the Defendant would be guilty of passion, provocation and manslaughter.

In order for you to find the Defendant guilty of murder, the State is required to prove to you each of the following elements beyond a reasonable doubt:

...

One of the elements that the State; must prove beyond a reasonable doubt is that the Defendant acted purposely or knowingly.  Now, a person who causes another's death and did so purposely when it is the person's conscious object to cause death or serious bodily injury resulting in death.

A person who causes another's death does so knowingly when the person is aware that it is practically certain that his conduct will cause death or serious bodily injury resulting in death.

(Tr., Oct. 27, 1992, at 93-94.)

The third element that the State must prove beyond a reasonable doubt to find the Defendant guilty of murder is that the Defendant did not act in the heat of passion resulting from a reasonable provocation.

Passion, provocation manslaughter is a death caused purposely or knowingly, that is committed in the heat of passion resulting from a reasonable provocation.  Passion, provocation manslaughter has four factors which distinguish it from murder.

In order to find the Defendant guilty of murder, the State only has to disprove -- one of them beyond a reasonable doubt.  The four factors you are--that there was adequate provocation; secondly, the provocation actually impassioned the Defendant; thirdly, the Defendant did not have reasonable time to cool off between the provocation and act which caused death; and fourth, the Defendant did not actually cool off before committing the act which caused death.

First, you must determine whether the provocation was adequate.  Whether the provocation is adequate essentially amounts to whether loss of self control is the reasonable reaction to the circumstances.

The provocation must be sufficient to arouse the passions of an ordinary person beyond the powers of his control.  For example, words alone do not constitute adequate provocation.  A threat with a gun or a knife or significant physical confrontation might be considered adequate provocation.

13

Second, you must determine whether the Defendant actually was impassioned, that is, whether he actually lost his self control.

Third, you must determine whether the Defendant had reasonable time to cool off.  In other words, you must determine whether the time between the provoking events and acts which caused death, was adequate to return a reasonable person's self control.

Fourth, you must determine whether the Defendant actually did not cool off before committing the act which caused death, that is, whether he was still impassioned.

If you determine that the State has disproved beyond a reasonable doubt that there was adequate provocation or that the provocation actually impassioned the Defendant or that the Defendant did not have reasonable time to cool off or that the Defendant did not actually cool off and in addition to disproving one of these four factors, you determine that the State has proven beyond a reasonable doubt that the Defendant purposely and knowingly caused death or serious bodily injury resulting in death, you must find the Defendant guilty of murder.

If, on the other hand, you determine that the State has not disproven, at least one of the factors of passion, provocation manslaughter, beyond a reasonable doubt, but the State has proven beyond a reasonable doubt that the Defendant purposely or knowingly caused death or serious bodily injury resulting in death, then you must find him guilty of passion, provocation manslaughter.

If, however, the State has failed to prove beyond a reasonable doubt that the Defendant acted purposely or knowingly or that the Defendant's conduct actually caused death or serious bodily injury resulting in death, you must acquit the Defendant of murder and passion, provocation manslaughter.

Then go on to consider whether the Defendant should be convicted of the crimes of aggravated or recklessness.  A person is guilty of aggravated manslaughter if he recklessly causes the death of

14

another person under circumstances manifesting extreme indifference to human life.

In order for you to find the Defendant guilty of aggravated manslaughter, the State is required to prove each of the following elements beyond a reasonable doubt:

Number one, that the Defendant caused Ronald Bailey's death; number two, that the Defendant did so recklessly, and number three, that the Defendant did so under circumstances manifesting extreme indifference to human life.

One element that the State must prove beyond a reasonable doubt is that the Defendant acted recklessly.  A person who causes another person's death does so recklessly when he's aware of and consciously disregards a substantial and unjustifiable risk that death will result from his conduct.

The risk must be of such a nature and degree that considering the nature and purpose of the Defeat's conduct and circumstances known to the Defeat, his disregard of that risk is a gross deviation from the standard of conduct a reasonable person would follow in the same situation.

In other words, you must find that the Defendant was aware of and consciously disregarded the risk of death.  If you find that the Defendant was aware of and disregarded the risk of causing death, you mut determine whether the risk that he disregarded was substantial and unjustifiable and in so doing so, you must consider the nature and purpose of the Defendant's conduct and circumstances known to the Defendant and you must determine whether in light of those factors, the Defendant's disregard of that risk was a gross deviation from the conduct a reasonable person would have observed in the Defendant's situation.

Another element that the State must prove beyond a reasonable doubt is that the Defendant acted under circumstances manifesting extreme indifference to human life.

The phrase under circumstances manifesting extreme indifference to human life does not focus on the

15

Defendant's state of mind, but also, rather on the circumstances under which you find he acted.

If in the light of all the evidence you find that the Defendant's conduct resulted in probability as opposed to mere possibility of death, then you may find that he acted under circumstances manifesting extreme indifference to human life.

On the other hand, if you find that his conduct resulted in only the possibility of death, then you must acquit him of aggravated manslaughter--of aggravated manslaughter, and consider the offense of reckless manslaughter which I will explain to you shortly.

The final that the State must prove beyond a reasonable doubt is that the Defendant caused Ronald Bailey's death. If after a consideration of all of the evidence you are convinced beyond a reasonable doubt that the Defendant recklessly caused Ronald Bailey's death under circumstances manifesting extreme indifference to the value of human life, then your verdict should be guilty of aggravated manslaughter.

If, however, after a consideration of all the evidence you are not convinced beyond a reasonable doubt that the Defendant recklessly caused Ronald Bailey's death under circumstances manifesting extreme indifference to human life, you must find the Defendant not guilty of aggravated manslaughter and go on to consider whether the Defendant should be convicted of reckless manslaughter.

A person is guilty of reckless manslaughter if he recklessly causes the death of another person. In order for you to find the Defendant guilty of reckless manslaughter, the State is required to prove each of the following elements beyond a reasonable doubt.

First, that the Defendant caused Ronald Bailey's death. Secondly, that the Defendant did so recklessly. A person who causes another person's death so--does so recklessly when he is aware of and consciously disregards a justifiable risk that the death would result from his conduct.

16

The risk must be of such a nature and degree that considering the purpose of the Defendant's conduct and circumstances known to the Defendant, his disregard of that risk is a gross deviation from a standard of conduct that a reasonable person would follow in a similar situation.

In other words, you must find that the Defendant was aware of and consciously disregarded the risk of causing death.

If you find that the Defendant was aware of and disregarded the risk of causing death, then you must determine whether that risk was that he disregarded was substantial and unjustifiable.

In so doing, you must consider the nature and purpose of the Defeat's conduct and the circumstances known to the Defeat and you must determine whether in light of those factors the Defendant's disregard of that risk was a gross deviation from conduct a reasonable person would have observed in the Defendant's situation.

(Id. at 97-102 (emphasis added).)

The next day, during deliberations, the jury sent out a question asking "in brief, what is the difference between aggravated and reckless manslaughter?" (Tr., Oct. 28, 1992, at 3.) Focusing on the differences, the Court instructed:

The significance between the two charges lies in what is called circumstances manifesting extreme indifference to human life.

That phrase does not focus on the Defendant's state of mind, but rather on the circumstances in which you find he acted.

If in the light of all the evidence you find that the Defendant's conduct resulted in a probability as opposed to a mere possibility of death, then you may find that he acted under circumstances manifesting extreme indifference to human life.

> And therein lies a critical distinction that is aggravated manslaughter related to probability versus reckless manslaughter which relates to possibility of death.
>
> If you find that the Defendant's conduct resulted only in a possibility of death, then you must acquit him of aggravated manslaughter and consider the offense of reckless manslaughter.

(Id. at 7-8.)

Petitioner contends that the instructions on the various forms of homicide were "confusing." He argues that although the trial court twice "stated" the difference between aggravated and reckless manslaughter, the court never explained the difference between "probability" and "possibility."[5]

The trial court found this claim procedurally barred and the Appellate Division affirmed.

This Court can discern no constitutional deficiency in the homicide instructions. More importantly, where Petitioner has been convicted of purposeful and knowing murder, this Court can discern no prejudice from any error in the instructions for the lesser-included offenses of aggravated and reckless manslaughter, which the jury did not need to reach once it found Petitioner guilty of purposeful and knowing murder. Petitioner is not entitled to relief on this claim.

---

[5] Petitioner asserted this claim in his second motion for post-conviction relief. (Exs. 11, 12.)

B.   The Read-Back Request

During deliberations, the jury sent the trial judge a note asking for a transcript of Petitioner's testimony.  While the judge was discussing with counsel how to respond, he was advised that the jury no longer needed the transcript because they had reached a verdict.  The judge sent a note to the jury through a sheriff's officer, with the approval of all counsel, asking "Is it true the jury no longer needs the transcript of  Marcus Phillips' testimony and that the jury has reached a verdict?" The sheriff's officer returned and stated, "I read -- read the question to the jury and the response was yes."  After the verdict was read by the jury, the jury was polled.  (Tr., Oct. 28, 1992, at 10-17.)

Petitioner contends that he was deprived of due process when the trial court "failed to respond" to the jury's request for a read-back of Petitioner's testimony, before Petitioner could be brought back to the courtroom, and allowed a sheriff's officer to take the judge's note to the jury to ask if they still needed to hear it.

Petitioner raised this claim in his second motion for post-conviction relief.  The trial court found the claim procedurally barred, and the Appellate Division affirmed.

A defendant's constitutional right to be present at every stage of his or her criminal proceeding is grounded in the

19

Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  See United States v. Tolliver, 330 F.3d 607, 611 (3d Cir. 2003).  Nevertheless, harmless error analysis applies when a trial judge answers a jury's note without the defendant or his counsel being present. Id.  "[T]here must be 'no reasonable possibility' of prejudice for an error to be deemed harmless."  Id. at 613 (citation omitted).

With respect to the response to the jury's note,

A trial court has broad discretion in deciding whether to accede to a jury's request for a reading of testimony.  But this discretion is based upon a limited, twofold rationale:  first, that requests to read testimony may slow the trial where the requested testimony is lengthy; second, that reading only a portion of the testimony may cause the jury to give that portion undue emphasis.  Thus, ... a trial judge abuses his discretion where the refusal to read requested testimony is not supported by one of these reasons.

U.S. v. Zarintash, 736 F.2d 66, 70 (3d Cir. 1984) (citations omitted).

Here, there was no reasonable possibility of prejudice from the judge and counsel, including defense counsel, discussing the jury note and sending a note to confirm that a verdict had been reached, before Petitioner could be returned to the courtroom. There was no refusal to read back Petitioner's testimony.  To the contrary, the jury reached a verdict while the trial judge and counsel were discussing the proper response to the jury request.

20

Events overtook the court's response to the jury request for a read-back of testimony.  Similarly, there is no evidence of impropriety or prejudice based upon the sheriff's officer reading to the jury the question drafted by the judge, and approved by defense counsel, simply asking whether the judge had been correctly informed that the jury had reached a verdict.

Petitioner is not entitled to relief on this claim.

C.   Sixth Amendment Right to Effective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  Id. at 694.  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.

21

"When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  <u>Id.</u> at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Strickland</u>, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  <u>Id.</u> at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of <u>Strickland</u>.  <u>See</u> <u>Berryman v. Morton</u>, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

1.  <u>Trial Counsel</u>

Petitioner alleges that trial counsel's representation was deficient in the following particulars: counsel failed to

22

challenge the defective jury instructions; counsel failed to challenge the response to the jury request for a read-back of Petitioner's testimony.

Petitioner raised this claim in his second motion for post-conviction relief.  The trial court found the claim procedurally barred, and the Appellate Division affirmed.

As there was no constitutional error with respect to the jury instructions or the court's response to the jury's request for a read back of testimony, there was no ineffective assistance of trial counsel.  Petitioner is not entitled to relief on this claim.

     2.   <u>Appellate Counsel</u>

Petitioner contends that his appellate counsel was deficient for failing to challenge the jury instructions and the response to the jury request for a read-back of Petitioner's testimony.

Petitioner raised this claim in his second motion for post-conviction relief.  The trial court found the claim procedurally barred, and the Appellate Division affirmed.

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985).  The <u>Strickland</u> standard for effective assistance of counsel applies to appellate counsel. <u>See</u> <u>Lewis v. Johnson</u>, 359 F.3d 646, 656 (3d Cir. 2004).

Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker," Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

As there was no ineffective assistance of trial counsel with respect to the challenged jury instructions and response to the jury's request, it was not ineffective assistance of appellate counsel to fail to raise these claims. Petitioner is not entitled to relief on this claim.

D.  Rebuttal Testimony

Petitioner contends that he was denied due process by the admission of rebuttal testimony, by the victim's brother, that the victim was not a large-scale drug dealer and thus, by implication, that he was not a person to be feared. Petitioner submits that this testimony was prejudicial because it undercut Petitioner's defense of self-defense or imperfect self-defense.[6] The Appellate Division found no error under state law in the admission of this rebuttal testimony and found further that, even if there were error, it was harmless in light of the substantial evidence of guilt.  (Ex. 6.)

---

[6] Petitioner exhausted this claim on direct appeal.

24

It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner cannot obtain relief for any errors in state law evidentiary rulings, unless they rise to the level of a deprivation of due process.

For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial.  <u>United States v. Agurs</u>, 427 U.S. 97, 108 (1976).

The Appellate Division has found that any error was harmless, and that factual finding is entitled to deference here. Petitioner has failed to present any evidence that he was harmed by the rebuttal testimony presented by the victim's brother, in response to Petitioner's testimony that he was afraid of the victim.  Certainly, there is no harm that deprived Petitioner of a fundamentally fair trial.

E.   <u>"Brady" Violation</u>

The Pre-Sentence Report revealed for the first time that the victim had a juvenile record of three arrests for robbery, burglary, and possession of a controlled dangerous substance.

25

This information was not provided to the defense during pre-trial discovery.  The prosecution did provide the defense with a criminal history computer sheet which reflected an arrest for narcotics.

Petitioner contends that this information would have been exculpatory, in that it would have been useful in establishing Petitioner's defense of self-defense and in cross-examination of the victim's brother, who had testified that his brother was not a large-scale drug dealer.[7]  The Appellate Division rejected this claim summarily.  (Ex. 6.)

The prosecution in a criminal matter has a constitutional obligation to disclose exculpatory evidence to the defendant. See Brady v. Maryland, 373 U.S. 83 (1967); Giglio v. United States, 405 U.S. 150, 154 (1972) ("A finding of materiality of the evidence is required under Brady.").  Exculpatory evidence is considered material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Strickler v. Greene, 527 U.S. 263, 280 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)).  Nondisclosure merits relief only if the prosecution's failure "'undermines confidence in the outcome of the trial.'"  Kyles v. Whitly, 514 U.S. 419, 434 91995) (quoting Bagley, 473 U.S. at 678).

_____

[7] Petitioner exhausted this claim on direct appeal.

Here, in light of the substantial evidence of the circumstances of the crime, the several eye-witnesses including co-defendant White, and the testimony that the victim was a drug dealer, albeit not a large-scale dealer, it cannot be said that the failure to disclose a record of the victim's juvenile arrests was material. Petitioner is not entitled to relief on this claim.

F.   <u>Juror Misconduct</u>

During a trial recess, following instructions to the jury not to discuss the case amongst themselves, two jurors were overheard discussing the case. One said, "He's guilty and that is all I know," and "If [Petitioner] had not shot [the victim], he wouldn't be on trial now." Petitioner's father and a friend have signed a sworn affidavit attesting to what they heard.

Petitioner raised this claim on direct appeal, in his Motion to Expand the Record. (Ex. 8.) The Appellate Division rejected this claim summarily. (Ex. 8.)

A criminal defendant has a Fourteenth Amendment due process right to "a tribunal both impartial and mentally competent to afford a hearing." <u>Jordan v. Massachusetts</u>, 225 U.S. 167, 176 (1912).

Although the origins of the rule are not clear, "It is a generally accepted principle of trial administration that jurors must not engage in discussions of a case before they have heard

both the evidence and the court's legal instructions and have
begun formally deliberating as a collective body."  United States
v. Resko, 3 F.3d 684, 688-89 (3d Cir. 1993).

> There are a number of reasons for this prohibition
> on premature deliberations in a criminal case.  First,
> since the prosecution presents its evidence first, any
> premature discussions are likely to occur before the
> defendant has a chance to present all of his or her
> evidence, and it is likely that any initial opinions
> formed by the jurors, which will likely influence other
> jurors, will be unfavorable to the defendant for this
> reason.  Second, once a juror expresses his or her
> views in the presence of other jurors, he or she is
> likely to continue to adhere to that opinion and to pay
> greater attention to evidence presented that comports
> with that opinion.  Consequently, the mere act of
> openly expressing his or her views may tend to cause
> the juror to approach the case with less than a fully
> open mind and to adhere to the publicly expressed
> viewpoint.

> Third, the jury system is meant to involve
> decisionmaking as a collective, deliberative process
> and premature discussions among individual jurors may
> thwart that goal.  Fourth, because the court provides
> the jury with legal instructions only after all the
> evidence has been presented, jurors who engage in
> premature deliberations do so without the benefit of
> the court's instructions on the reasonable doubt
> standard.  Fifth, if premature deliberations occur
> before the defendant has had an opportunity to present
> all of his or her evidence ... and jurors form
> premature conclusions about the case, the burden of
> proof will have been, in effect, shifted from the
> government to the defendant, who has "the burden of
> changing by evidence the opinion thus formed."

> Finally, requiring the jury to refrain from
> prematurely discussing the case with fellow jurors in a
> criminal case helps protect a defendant's Sixth
> Amendment right to a fair trial as well as his or her
> due process right to place the burden on the government
> to prove its case beyond a reasonable doubt.

Resko, 3 F.3d at 689-90 (citations omitted).

When jury misconduct (including improper intra-jury
influences) has been alleged mid-trial, the court should:
"ascertain whether the misconduct actually occurred; if it did,
determine whether it was prejudicial; and if there are no grounds
for a new trial, specify the reasons it decided that misconduct
did not occur, or occurred but was non-prejudicial."  Id. at 691
(citation omitted).

> [A]s a practical matter, it is far easier for a ...
> court to address allegations of jury misconduct when
> they come to light mid-trial rather than after the
> verdict has been entered and the jury discharged.
> Before the jury has been discharged, a ... judge can
> more readily and more fruitfully explore whether
> misconduct has in fact occurred and if so, its effect
> on the jurors.  Thus, the balance of practical
> considerations counseling in favor of further
> investigation into intra-jury misconduct are much
> greater when the misconduct is alleged mid-trial rather
> than post-verdict, when the district court's inquiry
> will likely be less productive while consuming more
> time and resources.  In addition, at that point, the
> district court is also in a position to tailor a
> cautionary instruction to correct the ascertained
> damage.

Id. at 694-95 (footnote omitted).  See also, Szuchon v. Lehman,
273 F.3d 299, 313-14 (3d Cir. 2001) (where defendant makes no
showing of prejudice based on premature deliberations, "there is
no reason to doubt that the jury based its ultimate decision only
on evidence formally presented at trial.") (citing Resko).

Here, Petitioner has made no showing of prejudice based upon
the premature deliberations of the two jurors.  Indeed, it is
clear from the jury's request for additional instructions

29

regarding the various types of lesser-included offenses that they deliberated the issue of what level of criminal culpability, if any, should attach to Petitioner's admitted killing of the victim.  Petitioner is not entitled to relief on this claim.

IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


 /s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE

Dated: October 11, 2005